```
                    UNITED STATES BANKRUPTCY COURT

                    EASTERN DISTRICT OF WASHINGTON

In Re:                          )
                                )    No. 04-07122-PCW7
PAMELA ROBIN RILEY,             )
                                )    MEMORANDUM DECISION RE:
              Debtor.           )    OBJECTION TO EXEMPTIONS
_____ )
```

THIS MATTER came before the Honorable Patricia C. Williams on July 12, 2007 upon (1) creditor Spokane Radio Inc.'s (hereinafter "KXLY") Objection to Debtor's Exemptions (Docket No. 41) and (2) Objection to the Trustee's Motion for Order Authorizing Trustee to Settle Trustee's Objection to Exemptions and to Reject Cash Offer to Settle Claim (Docket No. 73). The Court reviewed the files and records herein, heard argument of counsel and was fully advised in the premises. The Court now renders its Memorandum Decision.

## **FACTS**

This Chapter 7 debtor was employed by KXLY until December 31, 2002, when the employment was terminated. In February 2003, the debtor met with her state court counsel to discuss that termination and signed a fee agreement with that counsel in May 2003. Debtor filed a Human Rights Commission Complaint in June 2003, as a result of the employment termination and commenced the state court action alleging wrongful termination in August 2005.

On September 24, 2004, the debtor filed her Chapter 7 petition

MEMORANDUM DECISION RE: . . . - 1

and schedules, but did not disclose the existence of her claim against KXLY. The discharge was entered December 30, 2004. A "no asset" report was filed by the Trustee, and the case was closed shortly thereafter.

In late December 2006, on the eve of a trial setting hearing in state court, KXLY learned of the bankruptcy filing and promptly contacted the Trustee. The Trustee moved to reopen the case on January 19, 2007. The record is not clear, but apparently the Trustee was joined as an additional plaintiff in the state court action. The debtor, on January 24, 2007, filed an Amended Schedule "B" listing the claim against KXLY and an Amended Schedule "C" claiming certain proceeds of the claim exempt under federal law. On February 26, 2007, the debtor filed a second Amended Schedule "C" claiming certain proceeds of the claim exempt under state law. It is the Second Amended Schedule "C" which is at issue. The amended schedule claims $16,150 exempt pursuant to RCW 6.15.010(3)(f) relating to personal bodily injury and $1,045 exempt pursuant to RCW 6.15.010(3)(b) relating to "other personal property."

On February 2, 2007, KXLY filed a Proof of Claim in the Chapter 7 proceeding in the amount of $263.10 as it had acquired an assignment of a claim in that amount from Spokane Emergency Physicians, P.S. But for purchasing that claim, KXLY would not have standing to object to debtor's exemptions. Having purchased that right from Spokane Emergency Physicians, P.S., KXLY now exercises its right to object. The acquisition of the creditor's claim by KXLY was apparently a tactical maneuver.

KXLY argued that principles of judicial estoppel prevented the

MEMORANDUM DECISION RE: . . . - 2

debtor from receiving benefit from her undisclosed claim against KXLY, thus reducing its liability on that claim. The Trustee also objected to the debtor's exemptions, but the objection was resolved by a settlement with the debtor (Docket No. 62). KXLY objected to that settlement.

Trial in state court was delayed while various hearings occurred before this court. This court ruled that any effort to reduce KXLY's damages, assuming it was determined KXLY was liable on the debtor's claim, should be addressed in the state court proceeding. The parties proceeded to trial in state court, which resulted in a jury verdict on May 18, 2007 holding KXLY liable on the claim and awarding a judgment against KXLY in the amount of $75,000.[1] After entry of the jury verdict, KXLY filed a motion with the state court seeking a reduction of any resulting judgment based upon the equitable doctrine of judicial estoppel. KXLY argued that principles of judicial estoppel precluded the debtor from benefitting from the jury verdict. Because the debtor did not list the claim against KXLY in her original schedules and did not initially inform the bankruptcy Trustee of the claim, KXLY requested that the judgment be reduced to an amount sufficient only to pay the Chapter 7 administrative expenses and creditors, thus precluding the debtor from receiving any benefit of her claim against KXLY.

The state court conducted a post-trial evidentiary hearing to

---

[1] As of the date of hearing in this matter, the final judgment was being prepared for presentment to the state court as was a separate judgment for an award of attorney fees for debtor's state court counsel, who was also employed by the bankruptcy estate. The attorney fee award is not at issue in this bankruptcy.

MEMORANDUM DECISION RE: . . . - 3

determine the applicability of judicial estoppel to the debtor, leaving it to this court to determine the applicability of judicial estoppel to the Trustee. The state court found as a matter of law that in September 2004, when the bankruptcy was filed, the debtor had all relevant information to know that she held a claim. The failure to list the claim on the initial bankruptcy schedules was inconsistent with the debtor's pursuit of the claim before the Human Rights Commission and the state court. The debtor benefitted from that inconsistent position by obtaining a discharge in December 2004, relieving her from liability to her creditors while simultaneously seeking to recover money damages on her claim. The state court then found that the debtor "simply did not understand" that she had to list the claim nor did she understand the meaning of the schedules as they related to a contingent claim.

After analyzing the policy underlying the doctrine, i.e., the protection and preservation of the integrity of the judicial system, the state court determined that the doctrine was inapplicable. The jury had determined that a wrongful act had occurred and that damages in the amount of $75,000 had resulted. In order to protect the jury process, the judgment should not be reduced.

Because the state court determined that the verdict should remain unaffected, the issues before this court are whether the resulting judgment should be paid to the Trustee and, if so, how it should be distributed.

**ISSUES**

1. Is the Trustee judicially estopped from receiving the judgment amount?

MEMORANDUM DECISION RE: . . . - 4

2. How should the judgment amount be distributed, specifically (a) should the debtor be allowed to claim a portion of it exempt and (b) is the debtor precluded from receiving any excess proceeds from a solvent estate?

## ANALYSIS

### The Trustee is not Judicially Estopped

There is no dispute that the claim against KXLY and any resulting judgment is property of the estate. The fact that the debtor did not list the claim against KXLY on her bankruptcy schedules does not prevent the Trustee from pursuing the claim once it was discovered. A debtor's concealment of an asset does not estop a bankruptcy Trustee from recovering the asset. *In re Riazuddin*, 363 B.R. 177 (10th Cir. B.A.P. 2007); *Arkison v. Ethan Allen, Inc.*, 160 Wn.2d 535, 160 P.3d 13 (2007). The judgment should be paid to the Trustee. The question then becomes one of distribution of the proceeds of the judgment.

### Judicial Estoppel Does Not Prevent Distribution of Excess Estate Assets to the Debtor

This controversy regarding the debtor's right to exempt the proceeds of her claim against KXLY arose before any determination of the amount of proceeds or, indeed, before any determination of whether the claim was valid. This court declined to rule on the issue until the state court liquidated the claim. Now that the claim has been liquidated in the amount of $75,000, the estate is solvent. Creditors' claims have been filed in the amount of

MEMORANDUM DECISION RE: . . . - 5

$17,384.32.[2] The final amount of administrative expenses has not been determined, but are currently estimated by the Trustee at $20,000. If the debtor's claim of exemption is allowed after payment of administrative expenses of $20,000, creditors' claims of $17,384.32, and the exempt amount of $17,195 [a total of $54,579.32], the debtor would receive $20,420.68 [$75,000 - $54,579.32] as proceeds of the solvent estate. The total payable to debtor would be $37,615.68 [$17,195 exempt + $20,420.68 proceeds]. If debtor's exemption is disallowed, after payment of administrative expenses of $20,000 and creditors' claims of $17,384.32 [total $37,384.32], the debtor would receive $37,615.68 as proceeds of the solvent estate [$75,000 - $37,384.32]. Due to the fact that the estate is solvent, the debtor would receive the same amount whether the exemption is allowed or disallowed.

Whether the exemption is allowed or disallowed, all creditors, including KXLY on its assigned claim, would receive full payment. KXLY's position is that the application of the doctrine of judicial estoppel precludes the debtor from receiving any benefit from the judgment either by way of exemption or as excess proceeds of the solvent estate.

The judgment in its entirety is an asset of the estate and must be paid to the Trustee. The distribution of the asset must be in accordance with the Bankruptcy Code which establishes a priority of payment of claims against the estate. If all creditors and administrative expenses are paid in full, any excess estate funds must be distributed to the debtor. The fact that a debtor

---

[2]One Proof of Claim was filed without an amount. Also, the claim of Beneficial was filed twice in the case.

MEMORANDUM DECISION RE: . . . - 6

initially conceals an asset does not make the asset disappear or authorize the Trustee to retain it for his own benefit or to distribute it as a windfall to creditors or distribute it to some other entity. If a debtor conceals the existence of real property or shares of stock, which are later identified and reduced to cash, the initial concealment by the debtor does not effect the amount of cash payable to the estate. Once the estate is fully administered, any excess proceeds continue to exist regardless of the original concealment.

Even assuming bad faith on the part of the debtor, the cash proceeds of the concealed asset would continue to exist and would be distributed. No authority exists for the proposition that a debtor's concealment of an asset, which, after liquidation renders the estate solvent, prevents distribution to the debtor of excess proceeds once the estate is fully administered. Consequently, based upon current information, the debtor in this particular case will be receiving $37,615.68, whether that sum consists of an exempt amount and excess proceeds or whether the entire sum represent excess proceeds from a solvent estate.

The administrative expenses in the case, however, have yet to be finally determined. There is some ongoing activity in the state court case and an appeal of its decision may occur. It is also possible that this court's decision will be appealed. The controversy regarding the right of the debtor to claim an exemption in the judgment proceeds is not moot as it is unlikely, but possible, that the administrative expenses could increase to an amount sufficient to render the estate insolvent.

MEMORANDUM DECISION RE: . . . - 7

## **The Exemption Should Be Disallowed**

It is not uncommon for a debtor to file an amended schedule of exemptions seeking to exempt all or a portion of a previously concealed or inadvertently undisclosed asset. Both B.R. 1009 and B.R. 4003 are applicable to the amendment of exemptions and are liberally constructed to allow such amendments. Such amendments may be disallowed if the amendment was sought in bad faith or would result in prejudice to creditors.

> Exemptions can be amended at any time during the pendency of a bankruptcy case. *Andermahr v. Barrus*, 30 B.R. 532, 534 (9th Cir. B.A.P. 1983). Indeed, bankruptcy courts have no discretion to deny the amendment of exemptions unless the amendment is proposed in bad faith or would prejudice creditors.

*In re Rolland*, 317 B.R. 402, 414 (Bankr. C.D. Cal. 2004).

> As the Trustee acknowledges, Rule 1009(a) states that debtors may amend their schedules 'as a matter of course' at any time before the case is closed. *See Michael, supra*, 163 F.3d at 529; *Magallanes, supra*, 96 B.R. at 255-56. The rule is liberal, but is subject to some judge-made exceptions:
>
> Amendments are and should be liberally allowed at any time absent a showing of **bad faith or prejudice** to third parties. *In re White*, 61 B.R. 388, 394 (Bankr. W.D. Wash. 1986); [*In re*] *Andermahr*, 30 B.R. [532] 533 [9th Cir. BAP 1983]. Exceptional circumstances, however, may prevent a debtor from amending his petition or schedules. *Tignor [v. Parkinson]*, 729 F.2d [977] at 979 [4th Cir. 1984] [*overruled on other grounds as stated in In re Sherman*, 191 B.R. 654, 657 n. 3 (Bankr. E.D. Va. 1995)]; *In re Doan*, 672 F.2d 831, 833 (11th Cir. 1982) (bad faith by debtor or prejudice to creditors might bar amendment).
>
> *Magallanes*, 96 B.R. at 256 (emphasis added).

*In re Arnold*, 252 B.R. 778, 784 (9th Cir. B.A.P. 2000).

The question of whether the amended exemption should be allowed must focus upon substantive bankruptcy law and rules rather than the broader and more general principles of judicial estoppel.

MEMORANDUM DECISION RE: . . . - 8

However, the policy and considerations in allowing exemption of a previously undisclosed asset under B.R. 1009 are closely related to the policy and considerations of the doctrine of judicial estoppel.

Judicial estoppel is a common law doctrine applied by both federal and state courts. Application of the doctrine of judicial estoppel to the debtor's right to pursue a previously undisclosed claim is a question of federal law. *In re Coastal Plains, Inc.*, 179 F.3d 197 (5th Cir. 1999). The principles of judicial estoppel were articulated in *New Hampshire v. Maine*, 532 U.S. 742, 743 (2001):

> Courts have recognized that the circumstances under which judicial estoppel may appropriately be invoked are not reducible to any general formulation. Nevertheless, several factors typically inform the decision whether to apply the doctrine in a particular case: First, a party's later position must be clearly inconsistent with its earlier position. Second, courts regularly inquire whether the party has succeeded in persuading a court to accept that party's earlier position, so that judicial acceptance of an inconsistent position in a later proceeding would create the perception that either the first or the second court was misled.
>
> Third, courts ask whether the party seeking to assert an inconsistent position would derive an unfair advantage or impose an unfair detriment on the opposing party if not estopped. In enumerating these factors, this Court does not establish inflexible prerequisites or an exhaustive formula for determining the applicability of judicial estoppel. Additional considerations may inform the doctrine's application in specific factual contexts. Pp. 1814-1815.

The policy underlying the doctrine of judicial estoppel is the protection and preservation of the judicial process. *In re Coastal Plains, Inc., supra*; *Hamilton v. State Farm Fire & Cas. Co.*, 270 F.3d 778 (9th Cir. 2001).

The same policy underlies substantive bankruptcy law applying B.R. 1009 regarding amendments to exemptions. The duty of a debtor

MEMORANDUM DECISION RE: . . . - 9

to fully and accurately disclose the debtor's financial situation and file accurate and complete schedules is fundamental to the bankruptcy system. That affirmative and continuing duty is integral to the bankruptcy process and of grave importance to the court, the creditors, trustees and others. The policy underlying the doctrine of judicial estoppel is the protection of the integrity of the judicial process and, in a bankruptcy proceeding, the integrity of the process is dependant upon a debtor's complete and accurate completion of the schedules. Although not articulated as the doctrine of judicial estoppel, the application and interpretation of B.R. 1009(a) requires an analysis similar to that common law doctrine. Simply put, a debtor is not allowed to later exempt an undisclosed asset if the debtor's failure to disclose arose from the bad faith or an intent to conceal.

An important consideration in the application of the equitable doctrine of judicial estoppel is whether the debtor was making a misrepresentation to the court or engaging in a tactic to gain an unfair advantage or whether the debtor simply made an understandable mistake. *Dunmore v. U.S.*, 358 F.3d 1107 (9th Cir. 2004); *Johnson v. State, Oregon Dept. of Human Resources, Rehabilitation Div.*, 141 F.3d 1361 (9th Cir. 1998); *In re Grogan*, 300 B.R. 804 (Bankr. D. Utah 2003) (knowing failure to schedule a personal injury claim). This consideration in the application of judicial estoppel is analogous to the consideration of bad faith in the application of B.R. 1009.

The state court determined as a matter of law that the debtor knew of the evidence of the claim against KXLY when the bankruptcy was commenced and determined as a matter of fact that her failure

MEMORANDUM DECISION RE: . . . - 10

to list the claim in the bankruptcy schedule was a failure to understand rather than bad faith or a knowing effort to mislead. That factual determination is binding on this court.

Pursuant to 28 U.S.C. § 1738, federal courts must give preclusive effect to prior state judicial proceedings to the same extent as accorded by the courts in that state. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 381 (1985). In accordance with this mandate, federal bankruptcy courts are similarly bound to give preclusive effect to findings of fact as entered by state courts. *Kelleran v. Andrijevic*, 825 F.2d 692, 694 (2nd Cir. 1987), *cert. denied*, 484 U.S. 1007 (1988).

In applying B.R. 1009, however, harm to the parties in the bankruptcy proceeding, typically the creditors, is an important consideration. Bankruptcy courts have no discretion to deny the amendments of exemptions unless the amendment is proposed in bad faith or would prejudice creditors. *In re Arnold,* 252 B.R. 778 (9th Cir. B.A.P. 2000); *In re Magallanes,* 96 B.R. 253 (9th Cir. B.A.P. 1988). S*ee also*, *In re Rolland*, *supra*; *In re Grogan*, *supra.*

If, as in this case, the failure to disclose was inadvertent, a debtor is not allowed to later exempt an undisclosed asset if the failure to disclose would prejudice creditors.

As stated in *In re Arnold, supra*, at page 785:
> On the issue of 'prejudice' to third parties, there is an additional requirement. '[M]erely showing prejudice' does not automatically trigger disallowance of an amendment: the court must balance the prejudice to the debtor of disallowing the exemption against the prejudice to third parties in allowing the exemption.

Prejudice to creditors does not necessarily occur merely because an amended exemption relates to a previously undisclosed

MEMORANDUM DECISION RE: . . . - 11

asset. Delay in filing the amended exemption is a factor as is the filing of repeated amendments. Any adverse consequence to the bankruptcy estate, such as an increase in administrative expenses, will result in a denial of the exemption.

In this case, the administrative expenses have increased due to the amended exemption. Also, the controversy surrounding the amended exemptions was a factor in delaying the state court trial.[3] The totality of circumstances in this case results in the conclusion that should the estate be rendered insolvent by future events, creditors would be prejudiced by allowing the debtor's claimed exemption which would outweigh any prejudice to the debtor.

## **CONCLUSION**

The state court previously determined that the debtor was not estopped from pursuing her claim against KXLY. This court has determined that the trustee is not judicially estopped from pursuing such claim. As to the debtor's right to an exemption in the proceeds of such claim, Federal Law provides that amendments to schedules should be liberally allowed at any time, absent a showing of bad faith. The proceeds of that claim render the bankruptcy estate solvent and debtor's failure to initially disclose the claim does not deprive debtor of the right to receive the excess proceeds from the solvent estate. As to the debtor's right to an exemption

---

[3] The first amended exemption was based upon federal law and drew an objection on the basis that the exemption was improper. That objection resulted in this second amended objection based on state law. One basis of the objection is the impropriety of claiming a bodily injury exemption under RCW 6.15.010(3)(f) for a wrongful employment termination claim. That issue has not been addressed due to the conclusion reached in this decision. This decision also moots the objection to the Trustee's settlement with the debtor regarding exemptions.

MEMORANDUM DECISION RE: . . . - 12

in the proceeds of such claim, application of substantive bankruptcy law to the facts of this case precludes the debtor's amended claim of exemption as allowing such amendment would prejudice creditors. Therefore, that portion of the second amended exemption relating to the claim against KXLY is **DENIED**.

08/13/2007 12:01:30 PM

*Patricia C. Williams*
**Patricia C. Williams**
**Bankruptcy Judge**

MEMORANDUM DECISION RE: . . . - 13